Dr. Orly Taitz, ESQ

29839 Santa Margarita pkwy, ste 211

Rancho Santa Margarita, CA 92688

phone 949-683-5411 fax 949-766-7687

US District Court
Central District of
California

**Taitz**                                ) **Hon. Cormac Carney presiding**

**V**                                    ) **15-cv-00508**

**Burwell**                              )

**OPPOSITION TO SECOND MOTION TO DISMISS**

## STATEMENT OF FACTS

An issue of quarantine and isolation of individuals with infectious diseases arose in a related case Taitz v Johnson et al 14-cv-0119. Due to refusal by the defense to produce any requested records, Taitz filed a FOIA request for production of documents. Per 5 USC 552 FOIA, documents were supposed to be provided within 20 days. As no response was received for 46 days, a legal action at hand was filed.

Over a month **after** this legal action was filed, defendant provided only a few documents. Most of the requested documents were not provided.
On 02.14.15 the defense filed their motion to dismiss under FRCP 12b (6). The motion was fully briefed. The case was transferred from Texas to California for adjudication. This court decided not to rule on the Motion to Dismiss which was fully briefed and allowed the defendants to file a second, make up motion to dismiss. Defense provides herein her opposition to the second Motion to Dismiss.

## ARGUMENT

## THE COURT SHOULD DISREGARD ALL NEW FACTS AND LEGAL ARGUMENTS ADDED BY THE DEFENDANT IN THE SECOND MOTION TO DISMISS

On 02.04.15 Defense filed a motion to Dismiss under 12b(6) and 56(a) (ECF 4). Plaintiff filed an opposition and Defense filed a reply. The case was transferred to this court for adjudication. The court ordered the defense to re-file its' motion to dismiss with a new notice. Instead, the defense filed a whole new motion with new legal arguments and new facts. There is no FRCP rule allowing a second, make -up

Motion to Dismiss. This would not be allowed for private parties and should not be allowed for the government. The government should not be allowed a second bite of an apple and should not be allowed to clean up a poorly written motion and to supplement new facts and theories in the second motion. For this reason the court should disregard all new legal theories and new facts added in the second motion to dismiss.   Among those are two theories.

First, that the case is filed against the Secretary of HHS in her official capacity as the Secretary of HHS and not against HHS. This is a new theory added in the second, make-up, clean-up motion to dismiss and should be disregarded as it was not in the first motion to dismiss. Additionally, the cases are routinely filed against the government officials in their capacity as the chairs of agencies and departments and the courts consider those complains as complaints against an agency. Defense did not provide any precedents showing any judge ever dismissing a FOIA case because the head of agency in her official capacity and not the agency is named as a defendant.

Second addition to the second motion to dismiss is a notion that a reasonable search was done, however just as it was stated in the original opposition, this is only a presumption and it is rebutted by the facts

**THE CASE AT HAND CANNOT BE DISMISSED UNDER FRCP 12B6**

12b6 motion means failure to state the claim for relief. This motion at hand does not apply as the plaintiff properly stated the claim for relief in her complaint. The case cannot be more simple and clear. The Freedom of Information (FOIA) 5 USC 552 is unambiguous. The government is supposed to answer a FOIA request within 20 days. The defendant concedes that the government received the FOIA request and did not respond for 46 days prior to filing of this case.

As such, the plaintiff properly stated her claim for relief and the case cannot be dismissed under FRCP 12b6.

## THE CASE CANNOT BE DISMISSED UNDER FRCP 56 (A)

FRCP 56(a) Motion for Summary Judgment is granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"

1. At the time of filing of the case at hand the government did not provide any information. So, as a matter of law actually the plaintiff is the one who is entitled to a judgment in her favor, since there is no dispute that as a matter of law the government flagrantly violated 5 USC552 by not responding to a FOIA request.

2. The government's argument boils down to the fact that over a month <u>after</u> the case was filed and facing the need to file an answer to the complaint, the government finally responded. However, the response was provided after the case was filed and in the best case scenario, if the court finds that <u>all the documents</u> were provided in the belated response, the government should still reimburse the plaintiff for the costs incurred in having to file this law suit.

3. The government claims that <u>all</u> the documents were provided. The plaintiff states that <u>not all of the documents</u> were provided. This is a genuine question of fact, which means that FRCP 56 (a) motion should be denied as there is a genuine issue of fact.

4. The government states that all of the reasonable searches were done, all the documents were provided and claims that there is a presumption that the assertion by the government is correct. However, every presumption is rebuttable. Not long ago the government claimed that all of the available e-mails of Secretary of State Hillary Clinton were produced. Nevertheless, Federal Judge, Emmet Sullivan, ordered production and now we, members of the public, are receiving Secretary of

State Clinton's e-mails which previously ware considered to be non-existent. Similarly, the government claimed that the all of the e-mails of Lois Lerner, former Director of Internal Revenue Service's Exempt Organizations Unit, were released. However, FOIA action ***Judicial Watch, Inc. v. Internal Revenue Service*** (No. 1:13-cv-01559) revealed that Ms. Lerner had a second e-mail account under the name Tobi Miles (the name of her dog) and as a result of the FOIA law suit multiple e-mails were released, which showed targeting of conservative organizations. As a result of this case Ms. Lerner resigned and recently Congressman Jason Chaffetz, the Chair of the powerful House Oversight committee, proposed to commence the impeachment of the Commissioner of IRS, John Koskinnen. So, these recent events show that the court cannot blindly assume that all the information was provided when the government claims so.

## APRIL 2, 2015 LETTER FROM SENATORS MCCAIN AND FLAKE AND CONGRESSMEN GOSAR AND KIRKPATRICK SHOW THAT NOT ALL DOCUMENTS WERE PROVIDED BY THE GOVERNMENT.

The plaintiff attaches herein a letter from Senators McCain and Flake and Congressmen Gosar and Kirkpatrick to the Director of DHS, Jeh Johnson. (Exhibit 1) This letter relates to the contemplated release from the DHS custody of an illegal alien with Drug Resistant Tuberculosis, which is a deadly disease of public significance, which requires quarantine. The letter was dated April 2, 2015, it states that this illegal alien was in the DHS custody, in Arizona, for seven months. This means that this illegal alien was in custody from September 2, 2014. The FOIA case at hand was filed in November 2014 and required records of quarantine order going back to 2012. The government provided only one record of only one individual quarantined in Texas. There was no record of an individual quarantined

in Arizona, so this is a clear proof that not <u>all</u> records were provided. The government claims that all reasonable searches were done. This assertion does not hold water. Res Ipsa Loquitur, the facts speak for themselves. If a reasonable search was done, the government would have found and provided to the plaintiff a record of quarantine of at least this one illegal alien with deadly drug resistant Tuberculosis from  the DHS detention center in Arizona and they did not. They provided only one record of one individual from Texas, meaning that there was no sufficient reasonable search done.


The most important part of this FOIA request entailed request for isolation and quarantine records.  Within the response defendant provided only one quarantine record, most of the pages of the  response contained a lengthy article about Ebola in Africa and blank forms. Based on plaintiffs knowledge and informed belief, there are hundreds of cases of isolation and  quarantine  of individuals with infectious diseases. Based on the informed belief of the plaintiff, allegation by the defendant that submission of only 1 record for only one patient <u>represents all the requested documents,</u> is false. Specifically, question  3  in FOIA request seeks "Any  and  All Tuberculosis Quarantine orders issued from 2012".
Question 4 sought :"Any and all quarantine/isolation orders from 2012. "Question 4 related to all quarantine/isolation orders. The answer from the defense purports to  claim that there  was only  1  such order  and  only one  patient  who required isolation/quarantine. However, the prior judge in this case, Hon. Andrew Hanen stated during October 29, 2014 hearing:

"THE COURT: Let me — we have had people with active TB in this courtroom, which I assume since they were arrested and gone through various -- you know, according to what you're telling me, medical screenings and been in jail for a while before they ever get to us, I mean, we've had active TB people, immigrants in this courtroom. In this courtroom. You know, I mean, exposed Cristi and our interpreter and Barbara exposed to it." p89, Transcript of October 29, 2014 hearing in Taitz v Johnson, Obama, Burwell 14-cv-119 USDC Southern District of TX. (Emphasis added)

Based on the statement of Judge Hanen, there were several patients with active TB in his own courtroom, illegal aliens in Federal custody, there should have been isolation orders for them.

Further, Exhibit 2 is July 30, 2014 report by John Roth, Inspector General of the Department of Homeland Security. The report states on page 3" Additional Observations. Many UAC and family units require treatment for communicable diseases, including respiratory illnesses, tuberculosis, chicken pox, and scabies."(UAC stands for unaccompanied children). The report did not state 1 person; it clearly stated MANY UAC and family units. As such there should be multiple records, not one record.

Furthermore, Taitz is in contact with border patrol agents in San Diego, CA.

Taitz returned a call from the President of the local border Patrol Officers Union, Mr. Chris Harris. Taitz provides a declaration -summary of the interview of Mr. Harris attached herein.

During 02.10.2015 interview Mr. Harris stated:

1. Since 2012 there were around a dozen cases of illegal aliens with Tuberculosis crossing the border in San Diego area and being sent to local hospitals for quarantine and isolation.

2. Border Patrol agents are assigned hospital duty to watch over these illegal aliens in the hospitals. Mr. Harris was on such duty repeatedly.

3. Border Patrol Agents take to the hospital only illegal aliens who tell them that they have TB or when they suspect TB due to their persistent cough.

4. CDC claim that there was only one case of quarantine and isolation for TB in the whole nation in the period between 2012-2014, is disingenuous at best.

5. Aside from Tuberculosis, Mr. Harris observed illegal aliens with other infectious diseases crossing the border. He saw dozens of cases of illegal aliens with AIDS crossing the border. He saw multiple individuals with a combination of multiple infectious diseases, such as Tuberculosis and AIDS and others, crossing the border.

Further, Taitz received an e-mail from Border Patrol Officer Gabe Pacheco, spokesperson of the local Border Patrol Union. (Exhibit 3)

Mr. Pacheco stated that he did not receive authorization to provide Taitz with a total number of individuals, who were taken to the hospital for isolation and quarantine. However, Mr. Pacheco provided Taitz with December 2009 report by Inspector General of the Department of Homeland Security. The report is voluminous, however pertinent page 2 states "ICE detains more than 32,000 aliens on an average day". Simple math shows that if there are 32,000 detained aliens per day, multiplied by 365, it means there are 11,680,000 per year. Taitz sought information on isolation since 2012, since DACA program started. This means that in 3 years there were over 34 million illegal aliens in ICE custody and according to the report by the Inspector General of DHS, many of them have infectious diseases, such as Tuberculosis, chicken pox and others. It defies logic to believe that there was only **1** case of isolation and quarantine.

Hospitals and detention centers are required to report cases of infectious diseases and outbreaks to the CDC. Such information is supposed to be kept in a log and a bound file. Due to the fact that defendant did not provide Vaughn index and did not provide most of the documents requested, Plaintiff is asking the court to order defendant to provide to the plaintiff for review and copying a log of isolation/quarantine records. Plaintiff will redact all sensitive personal information.

Further, the matter of quarantine records is even more important today than ever. Recently, the Obama administration announced that it will move into the US some 200,000 migrants out of nearly a million migrants from the Middle East, Africa and Asia, who are currently flooding Europe. Among these migrants there are individuals with MERS (Middle Eastern Respiratory Syndrome), Tuberculosis, AIDS, Malaria, Cholera and other infectious diseases of public significance and proper quarantine records from the CDC/HHS are extremely important in order to prevent major epidemics. As an example, "Six European mayors have signed the agreement amid a surge of migrants arriving in their towns. The Italians fear that migrants could spread dangerous illnesses after scabies and tuberculosis outbreaks were recorded among some of the 68,000 who have arrived in the country since January. One of the concerned officials said: "We are a small town with 300 inhabitants, if someone with a strange disease arrives will we have to quarantine the town?"
http://www.express.co.uk/news/world/589606/immigration-Europe-EU-European-Union-migrants-infectious-disease-health-tuberculosis-Italy. These migrants will be placed in 100 cities among them cities right here in Orange county, CA.

Additionally on July 25, 2015 Federal Judge Dolly Gee in the Central District of CA in Flores v Johnson 2:85-cv-04544 DMG-AGR issued injunctive relief

releasing illegal alien accompanied minors and illegal alien adults from all DHS and HHS detention centers, which are mostly in Texas. These individuals are moving to California and other states, many have infectious diseases. Her decision prevents detention in DHS facilities of illegal alien minors and their families and it led to a new flood of illegal aliens. "WASHINGTON (AP) — The U.S. Border Patrol arrested nearly 10,000 unaccompanied immigrant children and families caught illegally crossing the border with Mexico in August, a 52 percent jump from August 2014, according to statistics published by the agency Monday afternoon.

Since the start of the fiscal year in October, border agents have arrested more than 35,000 children traveling alone and more than 34,500 people traveling as families, mostly mothers and children. http://www.chron.com/news/texas/article/White-House-Surprising-uptick-in-US-border-6519396.php

So, all of this data highlights the importance of proper quarantine records and transparency of these records. Additionally, it shows that the government's assertion that there was only one quarantine record for only one patient in the whole country is simply unreasonable and improbable.

## CONCLUSION

1. Defendant's Second Motion to Dismiss should be denied. Court should order defendant to produce all documents requested in FOIA, as well as production of Vaughn index.

2.  Court should order defendant to pay for the court fees of the plaintiff.

3.  The court should allow the plaintiff to review and copy the log of quarantines at the CDC headquarters at Atlanta, GA. The plaintiff will redact all personal information of the individuals in her copy.

Respectfully submitted,

/s/ Orly Taitz,

*11.05.15*

29839 Santa Margarita, ste 100, RSM, CA 92688

Declaration of Orly Taitz

I, Orly Taitz have personal knowledge of the facts below and declare as follows:

On 02.10.2015 I interviewed by phone Border Patrol Officer, President of local San Diego Border Patrol Union, Mr. Chris Harris. I reached Mr. Harris at 858-922-3197 number which was provided to me earlier by Mr. Harris.  During 02.10.2015 interview Mr. Harris stated:

1. Since 2012 there were around a dozen cases of illegal aliens with Tuberculosis crossing the border in San Diego area and being sent to local hospitals for quarantine and isolation.

2. Border Patrol agents are assigned hospital duty to watch over these illegal aliens in the hospitals. Mr. Harris was on such duty repeatedly.

3. Border Patrol Agents take to the hospital only illegal aliens who tell them that they have TB or when they suspect TB due to their persistent cough.

4. CDC's claim that there was only one case of quarantine and isolation for TB in the whole nation in the period between 2012-2014, is disingenuous at best.

5. Aside from Tuberculosis, Mr. Harris observed illegal aliens with other infectious diseases crossing the border. He saw dozens of cases of illegal aliens with AIDS crossing the border. He saw multiple individuals with a combination of multiple infectious diseases, such as Tuberculosis and AIDS and others,   crossing the border.

I declare that all of the above is true and correct to the best of my knowledge and informed belief.

/s/ Orly Taitz

02.17.2015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28