## Declaration

From     **Gabe Pacheco** <gabep21@gmail.com> hide details create a rule
To        **Orly Taitz** <orly.taitz@hushmail.com>
Sent     Monday, February 16, 2015 at 8:33 PM
Encrypted No
Signed   No
Show all headers

Orly,

I do not have authorization to make a declaration. However, since this is public record, I can forward this to you - Treatment Authorization Request (TAR) via an online system called TARWeb database would contain the correct information of how many illegal aliens have been treated for tuberculosis and various other diseases who were in CBP custody and received medical treatment.

Ref - DHS, OIG - The U.S. Immigration and Customs Enforcement Processing for Authorizing Medical Care for Immigration Detainees Report, OIG-10-23, December 2009, which a copy of this report is attached.

Though this report may not site particular medical cases, it does show "The Treatment Authorization Request Process for Nonemergency Care" that Customs and Border Protection (CBP) is required to provide.

--
Gabe Pacheco

# Background

## ICE Required to Provide Health Care

U.S. Immigration and Customs Enforcement (ICE) is responsible for protecting national security by enforcing customs and immigration laws. The *Immigration and Nationality Act* authorizes ICE to arrest, detain, and remove certain aliens.[1] ICE detains more than 32,000 aliens on an average day. Within ICE, the Office of Detention and Removal Operations (DRO) ensures safe and humane conditions of confinement. This includes an obligation to provide adequate health care for detainees.

Although the government must act with deliberate indifference to the serious medical needs of a detainee in order for any defect in the provision of medical care to rise to the level of a constitutional violation,[2] ICE's Office of the Principal Legal Advisor (OPLA), attempts to ensure that detention facilities exceed constitutional standards when providing medical care. Further, although defects in care resulting from either medical malpractice or negligent conduct do not necessarily meet the "deliberate indifference" standard for a constitutional violation, such conduct could potentially give rise to liability under the *Federal Tort Claims Act*, which allows the government to be sued "under circumstances where the United States, if a private person, would be liable to the claimant."[3]

The Division of Immigration Health Services (DIHS) is the ICE medical authority. In an October 2007 agreement between ICE and the Department of Health and Human Services, DIHS clinicians were detailed to ICE. They provide care at ICE-owned Service Processing Centers and Contract Detention Facilities that private organizations manage. County facilities that detain immigrants may use DIHS personnel, but usually provide onsite care to detainees through contracted medical providers or county health department staff.

The health program for ICE detainees employs a managed care model. As part of this model, DIHS adopted a Covered Services Package to outline general medical coverage policies.[4] The package was implemented in 2005, before DIHS became a part of ICE. OPLA believes that the Covered Services Package allows sufficient discretion for providers and physicians to obtain medically necessary treatment, even for services not

---

[1] 8 USC § 1226, 1227, 1229, and 1357.
[2] *Despaigne v. Crolew*, 89 F.Supp.2d 582, 585-6 (E.D. Pa. 2000).
[3] 28 U.S.C. § 1346(b)
[4] http://www.icehealth.org/ManagedCare/Combined%20Benefit%20Package%202005.doc.